IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TYLER B. KLINGENSMITH                                                                    PLAINTIFF

v.                              Civil No. 5:19-cv-5185
                                        5:20-cv-05015

DEPUTY ADRIAN CRUZ; LIEUTENANT
ROBIN HOLT; DEPUTY JOSEPH ALLEN;
DEPUTY MEGAN RUTLEDGE; DEPUTY
NICHOLAS GUERRERO;
LIEUTENANT RANDALL MCELROY;
SERGEANT JOE ADAMS; DEPUTY ANTHONY COBB;
SERGEANT BRADY; DETECTIVE MARK JORDAN;
JOHN DOE CAPTAIN; SERGEANT COGDILL;
BENTON COUNTY; JOHN DOE
SERGEANT WHO TOOK PICTURES; DEPUTY
ANTHONY COBB; and SERGEANT W. GUENTHER           DEFENDANTS

**REPORT AND RECOMMENDATION**

This is a civil rights action filed by Plaintiff Tyler Klingensmith pursuant to 42 U.S.C. § 1983. Plaintiff proceeds in this matter *pro se* and *in forma pauperis*. (ECF No. 1, 3). Separate Defendant Mark Jordan has moved for summary judgment (ECF No. 195), and Plaintiff has responded. (ECF Nos. 207, 211). Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2011), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation on the pending Motion for Summary Judgment.

**I. BACKGROUND**

A short history is helpful. Plaintiff filed his original Complaint in this matter on September 27, 2019. (ECF No. 1). On January 14, 2020, Plaintiff filed a separate case,

1

*Klingensmith v. Jordan, et al.*, 5:20-05015, involving largely the same Defendants and issues. The two cases were consolidated on April 24, 2020. (ECF No. 127). At that time, the Court noted that Plaintiff's previous complaints were difficult to construe and contained "unnecessary verbiage." (ECF No. 127 at 2). The Court directed Plaintiff to file an amended complaint that clearly and concisely sets forth his claims against each named Defendant. Plaintiff was limited to completing the form complaint and attaching up to six additional pages, and in addition, he was directed to provide the dates on which all events occurred and to assert a single cause of action for each claim or count. (ECF No. 127).[1]

Plaintiff filed his Third Amended Complaint on May 14, 2020. (ECF No. 135). The Court found Plaintiff's Third Amended Complaint failed to comply with the Court's earlier Order entered on April 24, 2020, but despite Defendants' arguments in separate Motions to Strike (ECF No. 139, 142), the Court, seeking to "best serve the interests of justice and conserve judicial resources," declined to strike the Third Amended Complaint. (ECF No. 144). The Court performed the necessary preservice screening pursuant to the Prison Litigation Reform Act ("PLRA"), dismissing certain of Plaintiff's claims without prejudice. *See* 28 U.S.C. § 1915A. As set forth in the Court's Memorandum Opinion and Order, the following of Plaintiff's claims remained for "further litigation:"

- Fourth Amendment claims against Defendants Shrum, Jordan, and Holt with respect to Plaintiff's alleged false allegations in arrest warrants as set forth in Claims 2, 3, 13 and 16.

- Fifth Amendment claims against Defendants Shrum, Jordan and Holt with respect to the questioning of Plaintiff as described in Claim 4.

- Freedom of Information Act (FOIA) claims pursuant to Arkansas Code Annotated §§ 25-19-101, et seq., against Defendants Holt, Rutledge, McElroy, and Jordan with

---

[1] In the Order consolidating the cases, and to streamline matters, the Court terminated as moot all motions pending as of April 24, 2020. (ECF No. 127).

    respect to Plaintiff's allegations that Defendants prevented his FOIA requests as set forth in Claim 5.

- Failure to Protect claims against Defendants Cruz and Guerrero with respect to Plaintiff's allegations that he was assaulted by inmate R.B. as set forth in Claims 6, 8 and 12.

- Failure to protect claims against Defendants Brady and Allen with respect to Plaintiff's allegations that he was assaulted by inmate R.B. as set forth in Claims 9 and 12.

- First Amendment retaliation claims against Cogdill, Jordan, Adams, Holt, Guenther, Rutledge, Brady, and Cobb with respect to Plaintiff's allegations that he was retaliated against for filing grievances as set forth in Claims 10 and 11.

- Fourth Amendment claim against Defendants Jordan and Shrum with respect to the alleged illegal search of Plaintiff's phone and alleged false statements in a search warrant related to Plaintiff's phone as set forth in Claim 14.

- Fourth Amendment claim against Defendant Jordan with respect to the alleged illegal search of Plaintiff's twitter account and alleged false statements in a search warrant related to Plaintiff's twitter account as set forth in Claim 15.

(ECF No. 144 at 10-11).[2]

    Separate Defendant Jordan filed the instant Motion for Summary Judgment, seeking dismissal of each of Plaintiff's claims against him. (ECF No. 195). Plaintiff filed responsive pleadings on June 8, 2021, and June 24, 2021. (ECF Nos. 207, 211). The Court notes that Plaintiff's filings included 814 pages, of which 705 pages are exhibits. While many of the exhibits are entirely irrelevant to the Plaintiff's claims and/or the issues presented by Defendant Jordan's Motion, the Court painstakingly has reviewed these documents in their entirety.

## II. PLAINTIFF'S CLAIMS AGAINST DEFENDANT JORDAN

    The Court also finds it useful to include a recitation of Plaintiff's allegations against Separate Defendant Jordan, using Plaintiff's contexts and descriptions (including reference to

---

[2] Defendant Shrum was dismissed without prejudice on December 7, 2020, because an accurate service address was not provided by the Plaintiff and was otherwise unavailable to the Court. (ECF No. 167).

other individuals). The Court has not attempted to correct all grammatical errors as the substance of Plaintiff's claims is more important than the form.

In Claim 2 of the Third Amended Complaint, Plaintiff argues that Defendant Jordan and others "conspired to swear to, press against and force prosecution" for a "false sex-offense and others in order to obtain jurisdiction of my person in Indiana." (ECF No. 135 at 5).

Claim 3 alleges that on January 27, 2018, Defendant Jordan

> and Wiseman conspired to misrepresent, falsify, and omit the true and accurate facts of my previous criminal history. They included arrests that resulted in no criminal prosecution, conviction(s) and or legal disposition. The Aff'd was of no legitimate reason other than to deny me to a fair and appropriate bond. The Aff'd was used in a malicious and deceitful manner and stated "He has no known ties to the area" which is a blaton (sic) lie to elude the judge into believing I'm a flight risk. As well my 'extensive history' was fabricated to show by omission that I would have more criminal history than is true. It includes offenses from when I was under 18 years of age, and by omission leaves the impression that misd. Convictions are possible felonies, as well omits the year of conviction to give the impression that they were recent. There was no probable cause within the (4) corners that would warrant legitimacy.

(ECF No. 135 at 6).

Plaintiff alleges in Claim 4, that Defendant Jordan and others

> conspired to have Jordan act and impersonate a false representation of a bondsman on Feb. 1st, 2018, in a deceitful attempt to withdraw information from myself about the criminal investigation . . . at no point did Jordan notify me he was police officer or notified me of my rights. . . . Defendants conspired to question me under false pretenses after my arrest and I requested an attorney in an attempt to withdraw inculpatory evidence by personal statement but I refused to cooperate.

(ECF No. 135 at 9).

With respect to his FOIA claims, Plaintiff alleges in Claim 5 of the Third Amended Complaint that he

> filed several FOIA requests after Jordan came to the jail and told R. Holt to "make his life hell"; I notified R. Holt, Rutledge and McElroy that I was not a felon and provided the statute number of FOIA Requests; I mailed several requests to 1300

4

> S.W. 14th St. 72712 through 4-2-18 until 8-20-18; I even had other people from Indiana send requests; Rutledge stated R. Holt will not allow her to fulfill my requests, but if a person from the outside mails one or brings it to the jail she can do it without them finding out; but on 4-2-18 Rutledge returned my requests unfulfilled; I sent several requests to McElroy . . . said it had been confirmed "you cannot file an FOIA"; On several requests it stated "per Rainwater, Holt, and Sexton . . . you cannot file an FOIA", this is the same attorney Jordan emailed prior to my arrest conspiring to . . . me after my arrest and was sent to BCDC Administration as well; The defendants conspired to deny files, videos and other items that would have been useful and evidence in a civil case and others and attempted to hide behind their counsel and deny my FOIA requests because I refused to cooperate with their false sex offense investigation.

(ECF No. 135 at 9).

> Plaintiff's Claim 10 alleges Defendant's failure to protect in that

> [b]etween 2-12-18 and 3-24-18 I filed several grievances on Adams, Holt, Cogdill for keeping me on Ad. Seg. after Jordan made his threat towards me to Holt on 2-1-18, "make his life hell"; On 3-24 Cogdill came to me and stated "your not getting the picture, you need to do things our way or we'll make you"; Cogdill stated it was about my grievances; on 3-26 Jordan served a [null] warrant for a twitter acct; and stated "you will be a sex offender for what you did", "do you know what they do to sex offenders?"; I was then locked in Ad. Seg. on 3-26 and Chandler wrote a false discipline on 3-29 for showing naked in the shower, to justify the Ad. Seg. transfer; I was left in Ad. Seg. until 8-23 after my conviction; Adams made threat of intimidation and coercion to pursued me to cooperate; Defendants conspired to retaliate by locking me in Ad. Seg. without due process because I refused to cooperate in the investigation and filed grievances on this matter.

(ECF No. 135 at 11).

Claim 11 has been construed by the Court as an allegation of a violation of Plaintiff's First Amendment right against retaliation following grievances and processes in the Benton County Detention Center:

> On Feb. 1st Jordan told Holt to "make his life hell"; Feb. 12th I went to civil court with no prior notice of the hearing; the judge ordered in favor of the petitioner; Jordan appeared and testified on behalf of petitioner; Adams, Cogdill kept me on ad. seg. After the investigation but released R.B. into population; Jordan spoke to Adams on . . . 5th & 6th about keeping me on Ad. Seg. and the assault; SRGT Brady told me to lock back down to my cell on several occasions during allotted rec time while doing law research; Cobb returned several letters I was sending to

> the courts and the newspaper; Adams told me to go through Cogdill with Ad. Seg. complaints; Cobb called me to . . . and stated "we didn't thing you had it in you to fight back"; on several requests and grievances Holt told me I cannot have a notary or go to law library; on 4-12 Rutledge said R. Holt and others will not allow you to do a FOIA or go to law library; On 4-1 Guenther used 6 officers to invoke fear and intimidate me while she notarized my appeals and writs; Guenther would only notarize what she wanted to notarize and confiscated several witnesses forms/aff'd as well; I had to threaten Cruz on 3-30 (to sue him) so he would allow me to type the writs; Ross wrote me a disciplinary the same day for "complaining" about not getting a notary, but I had already received the notary prior to the disciplinary; Defendants conspired to cause an untimely filing of motions in circuit court by frustrating and impeding my access to the court because I refused to cooperate in the investigation and . . . protested and appealed the civil court rulings.

(ECF No. 135 at 12).

In Claim 13, Plaintiff contends that

> on Jan. 15th through the 26th Jordan and Shrum conspired . . . to file a . . . probable cause aff'd for a false sex offense to defeat the habeas corpus for myself in Indiana. Once I was brought to Ark. and agreed to a plea on 7-29-18 I was rearraigned on new charges that did not include the sexual extortion charge nor plead to an offense on my personal jurisdiction waiver; . . . Jordan . . . conspired . . . to defeat my habeas corpus proceedings in Indiana in an illegal manner so they could illegally send me to prison.

(ECF No. 135 at 13).

Claim 14 describes one of Plaintiff's Fourth Amendment claims:

> On Jan. 26th I was arrested; for unlawful distribution and sexual extortion; Shrum confiscated the alleged phone of mine upon arrest; Jordan and Shrum checked the phone out of evidence several times to attempt to log into the phone; on several occasions the phone was powered on and turned off by Jordan prior to a search warrant; A search warrant was applied for in April that had statements of false facts and omitted circumstances and facts; Clearly stated in court that they were attempting to get access by warrant into the phone and online accts. on Feb 21st or about; Defendants conspired to illegally search the phone prior to a warrant and then filed a probable cause aff'd that had lies and omitted fact to obtain probable cause to search the phone, and or obtained no probable cause within the four corners of the aff'd.

(ECF No. 135 at 13).

Plaintiff's Claim 15 asserts an additional Fourth Amendment claim:

> On Jan. 26th I was arrested; for unlawful distribution of several images and sexual extortion; On Feb. 21st or about clearly stated in court that they were attempting to get access to the twitter acct; on March 26th or about a search warrant was applied for; the facts were lies and info of Kaley's phone numbers were falsified, circumstances and facts were omitted; the email addresses belonged to Kaley; the results were [null] in the warrant return; Defendants conspired with no legitimate ends thereof, lied of facts and omitted facts and circumstances to/in the probable cause aff'd and/or no probable cause existed within the aff'd of cause.

(ECF No. 135 at 13).

Finally, in Claim 16, Plaintiff alleges that

> Jordan filed the aff'd of arrest . . . The Defendants conspired to send me to prison for non-existent crimes that do not meet subject-matter jurisdiction contains no (mens rea) culpable mental state and out of personal jurisdiction.

(ECF No. 135 at 13).

### III.     UNDISPUTED FACTS

After careful review of the submitted summary judgment pleadings, the Court finds that the following facts are undisputed:

- On January 15, 2018, Defendant Mark Jordan, a detective for the Bentonville Police Department, was assigned to investigate a domestic relations case against Tyler B. Klingensmith involving his ex-girlfriend, Kaley Schwab.  (ECF No. 197-1 at 1).

- The Bentonville Police Department is separate from the Benton County Detention Center ("BCDC") and is located at a different physical address.  (ECF No. 197).

- Defendant Jordan does not work for the BCDC and has no authority to order any discipline to an inmate housed there, nor to send or hold any inmate in "administrative segregation."  (ECF No. 197-1 at 5).

- Plaintiff was arrested in Indiana on January 18, 2018 and was held at the Marion County Jail in Indianapolis, Indiana following his arrest.  (ECF No. 197-2).

7

- Officer Colin Shrum served Plaintiff with probable cause warrant BVP2018-18 on the following charges: Sexual Extortion, Financial Identity Fraud, Non-Financial Identity Fraud, Terroristic Threats First Degree (two counts), and Unlawful Distribution of Sexual Images. (ECF No. 197-3).

- Officer Shrum transported Plaintiff to the Bentonville Police Department and conducted an interview. (ECF No. 197-3).

- Plaintiff signed a waiver that he understood his Miranda rights and agreed to speak to Officer Shrum without an attorney. (ECF No. 197-3).

- Plaintiff was digitally photographed, fingerprinted, and booked into the Bentonville Police Department. Upon completion of Plaintiff's booking, Officer Shrum transported Plaintiff to the BCDC. (ECF No. 197-1 at 1-2; 197-3).

- On March 12, 2018, as a result of probable cause warrant BVP2018-18, Plaintiff was charged in the Benton County Circuit Court with Sexual Extortion, Fraudulent Use of a Credit or Debit Card, Computer Fraud, Terroristic Threatening in the First Degree, Unlawful Distribution of Sexual Images or Recordings, Harassing Communications, Stalking in the Third Degree, and Violation of a Protective Order. (ECF No. 197-4).

- Defendant Jordan returned to the BCDC to serve search warrant returns on Plaintiff on two separate occasions: Once on March 26, 2018, for a search warrant return for Plaintiff's Twitter account; and, again on May 3, 2018, for a search warrant return for Plaintiff's cell phone. (ECF No. 197-1 at 3; 197-6).

- On August 10, 2018, Plaintiff's charges were amended to include Stalking in the Second Degree, Terroristic Threatening in the First Degree, Financial Identity Fraud, Unlawful Distribution of Sexual Images or Recordings, and Violation of a Protective

Order. (ECF No. 197-4; 197-5).

- On August 13, 2018, Plaintiff pled guilty to Stalking in the Second Degree, Terroristic Threatening in the First Degree, Financial Identity Fraud, Unlawful Distribution of Sexual Images and Recordings, and Violation of a Protective Order. (ECF No. 177-3; 197-7).

- Plaintiff was sentenced to ten years in the Arkansas Department of Correction. (ECF No. 197-7).

In the pleadings, there is considerable time spent by Plaintiff on allegations that Defendant Jordan impersonated a bondsman and accessed Plaintiff's storage building under that ruse. The Court does not find these facts material to its decision, but notes the following facts appear undisputed:

- On February 1, 2018, Defendant Jordan visited Morningstar Storage (where Plaintiff allegedly had personal property stored) and picked up a copy of a release form for the release of personal property. (ECF No. 197-1 at 3, 5).

- That same day, Jordan met with Plaintiff at the jail, and Plaintiff signed the release, releasing the property in the storage unit to Morningstar. (ECF No. 197-1 at 3, 5).[3]

- The release form signed by Plaintiff states that he "hereby relinquishes all interest in the personal property located in the Leased Space . . . and authorizes Morningstar to

---

[3] It is alleged by Defendant Jordan but denied by Plaintiff that on January 30, 2018, during a telephone conversation, Rhonda Stogsdill (Plaintiff's mother), indicated to Defendant Jordan that Plaintiff had personal property belonging to him and Kaley Schwab in a storage unit at Morningstar Storage in Bentonville. Jordan alleges that Ms. Stogsdill told him that she spoke with a representative from Morningstar and learned that she or Brianna Strong (the mother of Plaintiff's children), could retrieve the property if Plaintiff signed a release form. Jordan says he told Ms. Stogsdill that – because no one at the jail would be likely to help her to get the release form signed by her son – he would help her. (ECF No. 197-1 at 2-3). Plaintiff does not agree to these particular facts and thus, they are disputed for purposes of F.R.Civ.P. 56; however, as noted, the Court finds these facts immaterial to its analysis and recommendation herein.

 dispose of said property in any manner it so chooses." The release further states that it was executed in consideration for forgiveness of debts owed on storage fees as a final settlement of all remaining balances. (ECF No. 197-1 at 5).

- Defendant Jordan took the signed release form back to Morningstar on the same day Plaintiff executed the release. (ECF No. 197-1). A Morningstar representative signed the form as well. (ECF No. 197-1 at 5).

### IV. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). For reasons set forth below, the

Court now recommends summary judgment be entered in favor of Defendant Jordan and Plaintiff's claims against him dismissed with prejudice.

## V.  DISCUSSION

### A.  *Heck v. Humphrey* – Fourth Amendment Claims

Defendant Jordan argues he is entitled to summary judgment with respect to each of Plaintiff's Fourth Amendment claims against him pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). For the sake of analyzing this argument, Plaintiff's Fourth Amendment claims against Defendant Jordan generally fit into two categories:  (1) Plaintiff's allegations (Claims 2, 3, 12, and 13) that Jordan either made, or conspired to make, false statements in affidavits for probable cause with respect to Plaintiff's Arkansas arrest; and (2) Plaintiff's allegations (Claims 14 and 15) that Defendant Jordan was involved in an illegal search of his phone and Twitter account and made false statements in search warrants related to his phone and Twitter accounts.

In *Heck v. Humphrey*, the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck,* 512 U.S. 477, 486-87.  To the extent Plaintiff contends that Defendant Jordan lacked probable cause to arrest Plaintiff, such a claim is barred by *Heck* because Plaintiff ultimately pled guilty to an offense arising from his arrest.[4] *See*

---

[4] Of the offenses he was originally arrested for, Plaintiff ultimately pled guilty to Terroristic Threatening in the First Degree, Class D Felony; Unlawful Distribution of Sexual Images or Recordings, Class A Misdemeanor; and Violation of an Order of Protection, Class A Misdemeanor.  (ECF No. 177-3; 197-7). Plaintiff has not provided any evidence that his convictions have been invalidated by the highest state court or in federal *habeas* proceeding.

*also Sanders v. Fayetteville City Police Dep't*, 160 Fed. App'x. 542, 543 (8th Cir. 2005) (citing *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) (allegations that defendants lacked probable cause to arrest the plaintiff and brought unfounded criminal charges challenged validity of conviction and were *Heck*-barred)); *Williams v. Schario*, 93 F.3d 527, 529 (8th Cir. 1996)(per curium)(false testimony and malicious prosecution claims are *Heck*-barred where they necessarily imply invalidity of conviction or sentence). *Cf. Thurmond-Green v. Hodges,* 128 Fed. Appx. 551 (8th Cir. 2005); *and Whitehead v Garrett*, 2012 WL 3939967 (E.D. Missouri, Sept. 10, 2012). Under this body of law, Plaintiff may not employ the civil rights statutes as a substitute for *habeas corpus* relief. In other words, Plaintiff cannot seek relief pursuant to § 1983 which would undermine or potentially invalidate his criminal charges, convictions, and subsequent confinement. *See e.g., Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973) (*habeas corpus* is the sole federal remedy for prisoners attacking the validity of their conviction or confinement).

As this Court previously has recognized, it may instead be Plaintiff's intent to assert these Fourth Amendment claims against Defendant Jordan on the basis of alleged false allegations or false statements in his arrest warrant.[5] (ECF No. 144 at 10-11). Such as claim is not specifically barred by *Heck* and should instead be reviewed pursuant to the Supreme Court's analysis provided in *Franks v. Delaware*, 438 U.S. 154 (1978). S*ee Odom v. Kaizer*, 638 Fed. Appx. 553, (8th Cir. 2016). The problem with Plaintiff's theory is that throughout his summary judgment papers, Plaintiff makes only broad, general allegations with respect to his claim of false statements by Defendant Jordan. Plaintiff identified *no* particular untruth attributable to Defendant Jordan in his Affidavit in Support of Probable Cause; rather, Plaintiff's claim appears

---

[5] Defendant Jordan's Affidavit of Probable Cause to Obtain an Arrest Warrant is located at ECF No. 211-4 at 67 - 79.

premised upon a conspiratorial arrest based, in turn, upon unspecified false information provided by Plaintiff's ex-girlfriend and other non-parties to this action. Once again problematic for Plaintiff is a lack of any proof concerning a conspiracy involving Defendant Jordan.

Generally, to prove a § 1983 conspiracy claim, a plaintiff must show that the defendant (1) conspired with others to deprive him or her of a constitutional right; (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) the overt act injured the plaintiff. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). While "the plaintiff need not show that each participant knew the exact limits of the illegal plan . . . [he] must show evidence sufficient to support the conclusion that the defendants reached an agreement to deprive the plaintiff of constitutionally guaranteed rights." *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008) (cleaned up). "To advance past the summary judgment stage, [Plaintiff] must allege with particularity and specifically demonstrate material facts that the defendants reached an agreement." *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 582 (8th Cir. 2006) (cleaned up) (affirming grant of summary judgment on plaintiff's § 1983 claim where plaintiff presented "no specific material facts, circumstantial or otherwise, that the officers formed an agreement to violate [the plaintiff's] constitutional rights").

Plaintiff presents no proof that Defendant Jordan conspired with others to deprive Plaintiff of a constitutional right in this regard or that any co-conspirator engaged in an overt act in furtherance of the alleged conspiracy. Viewing the evidence in a light most favorable to Plaintiff, no reasonable juror could infer the existence of a conspiracy with respect to Plaintiff's Fourth Amendment claims. For these reasons, summary judgment is recommended with respect to any claims by Plaintiff that Defendant Jordan violated Plaintiff's constitutional rights by including false statements in the affidavit supporting his arrest.

Summary judgment is also appropriate with respect to Plaintiff's contention that Defendant Jordan violated his Fourth Amendment rights when he conducted an illegal search and/or illegally obtained a search warrant for his phone and twitter accounts. Although Defendant Jordan contends summary judgment is appropriate because the claims are barred under *Heck*, according to *Heck*, because of doctrines like independent source, inevitable discovery, and harmless error, damages suits for an unreasonable search *may lie* even if the challenged search produced evidence that was introduced in a state criminal trial resulting in a conviction. *Heck,* 512 U.S. at 487 n. 7; *see also Moore v. Sims*, 200 F.3d 1170-72 (8th Cir. 2000).

Nonetheless, while Plaintiff's search claims are not specifically barred by *Heck,* they *are* subject to dismissal under the holdings of *Heck.* As stated by the Supreme Court in footnote 7 of *Heck*, "[i]n order to recover compensatory damages . . . the [section] 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury." *Heck*, 512 U.S. at 487 n. 7. *See Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 308 (1986). Here, Plaintiff had already been arrested and was in custody at the time of the execution of the search warrants. Further, and importantly, Plaintiff does not allege that any incriminating evidence was seized as a result of the alleged unlawful search of his phone and twitter accounts. Plaintiff simply has not alleged *any* injury stemming from the alleged unlawful search by Defendant Jordan.

For the reasons stated above, Defendant Jordan is entitled to summary judgment with respect to each of Plaintiff's Fourth Amendment claims.

## B. Fifth Amendment Claim

In claim 4 of his Third Amended Complaint, Plaintiff contends Defendant Jordan and

others "conspired to have Jordan act and impersonate a false representation of a bondsman on Feb. 1st, 2018, in a deceitful attempt to withdraw information from myself about the criminal investigation . . . at no point did Jordan notify me he was police officer or notified me of my rights. . . . Defendants conspired to question me under false pretenses after my arrest and I requested an attorney in an attempt to withdraw inculpatory evidence by personal statement, but I refused to cooperate."  (ECF No. 135 at 9).

In *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination prohibits the admission into evidence of statements given by a suspect during a "custodial interrogation." In general, once an individual invokes his right to counsel custodial interrogation must cease. *Moran v. Burbine*, 475 U.S. 412, 433 n.4 (1986). However, if statements obtained during a custodial interrogation are not used against a party, there is no constitutional violation.  *Davis v. City of Charleston*, 827 F.2d 317, 322 (8th Cir. 1987).   "[A] litigant cannot maintain an action under § 1983 based on a violation of the *Miranda* safeguards.... [Th]e remedy for a *Miranda* violation is the exclusion of evidence of any compelled self-incrimination, not a section 1983 action." *Hannon v. Sanner*, 441 F.3d 635, 636 (8th Cir. 2006) (internal quotation marks and citations omitted).

Plaintiff's Fifth Amendment claim is fatally flawed.  It is undisputed that Plaintiff pled guilty to multiple offenses, including offenses for which he was arrested *prior* to any custodial interrogation by Defendant Jordan.  Plaintiff has presented no evidence that information obtained by Defendant Jordan during his alleged unconstitutional custodial interrogation of Plaintiff was ever used against Plaintiff in his criminal case, and accordingly, there can be no Fifth Amendment violation.  *Davis v. City of Charleston*, 827 F.2d 317, 322 (8th Cir. 1987).  Summary judgment is appropriate with respect to Plaintiff's Fifth Amendment Claim.

### C. Arkansas Freedom of Information Act

In claim 5 of his Third Amended Complaint, Plaintiff complains of irregularities with respect to the requests he submitted under Arkansas' Freedom of Information Act. (ECF No. 135 at 9). Unfortunately, violations of the Arkansas Freedom of Information Act are not cognizable under § 1983. *See Taylor v. Denniston*, 111 Fed.Appx. 864 (8th Cir. 2004) (citing *Walker v. Reed*, 104 F.3d 156, 157 (8th Cir 1997); *see also, Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992) (Even "[a] bad-faith violation of state law remains only a violation of state law."). Plaintiff's Arkansas FOIA claim is subject to dismissal.

### D. First Amendment Retaliation

Liberally construing certain statements contained in Claims 10 and 11 of Plaintiff's Third Amended Complaint, the Court will consider them First Amendment retaliation claims. With respect to Defendant Jordan, Plaintiff asserts that Jordan made threats to "make his life hell" and then discussed with other Benton County Defendants keeping Plaintiff in administrative segregation. (ECF No. 135 at 11, 12). Plaintiff contends that following Jordan's "make his life hell" statement, he was subjected to adverse actions including being kept in administrative segregation, and being denied privileges such as a notary public, law library access, legal mail, and FOIA materials.

First, it is the general rule that "mere verbal threats made by a state-actor do not constitute a § 1983 claim." *Hopson v. Fredericksen*, 961 F.2d 1374, 1378 (8th Cir. 1992). Second, and more importantly, it is undisputed that Defendant Jordan does not work for the Benton County Detention Center where Plaintiff was housed in administrative segregation. (ECF No. 197-1 at 5). Defendant Jordan's employer – the Bentonville Police Department – is located at a different address and is an entirely separate governmental entity from the BCDC.

(ECF No. 197). Defendant Jordan had no authority whatsoever to assign Plaintiff to administrative segregation, keep Plaintiff in administrative segregation, or deny Plaintiff privileges while being housed at the BCDC. And third, to the extent Plaintiff contends a conspiracy involving Defendant Jordan caused a violation of his First Amendment rights, Plaintiff has not met his burden. Other than bare allegations, Plaintiff presents no direct or circumstantial evidence of any agreement between Defendant Jordan and others at BCDC to deprive Plaintiff of his First Amendment rights through retaliation. *See Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 582 (8th Cir. 2006) ("To advance past the summary judgment stage, [Plaintiff] must allege with particularity and specifically demonstrate material facts that the defendants reached an agreement."). Although the Court properly construed Plaintiff's pleadings liberally, the Court cannot set aside or ignore the pleading requirements, and summary judgment is appropriate with respect to this First Amendment retaliation claim.

### E. Qualified Immunity

Defendant Jordan alternatively argues that he is entitled to qualified immunity with respect to Plaintiff's claims against him. The Court, having determined the facts pled do not support a constitutional violation, finds that Defendant Jordan is entitled to qualified immunity with respect to each of Plaintiff's claims. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

### VI. CONCLUSION

For the reasons set forth herein, it is recommended that the Motion for Summary Judgment (ECF No. 195) of Defendant Jordan be GRANTED and that Plaintiff's claims against Defendant Jordan be DISMISSED WITH PREJUDICE.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 31st day of January 2022.

*Christy Comstock*
CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE