IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

TYLER B. KLINGENSMITH                                                                              PLAINTIFF

V.                              CASE NOS. 5:19-CV-5185
                                          5:20-CV-5015

DEPUTY ADRIAN CRUZ; LIEUTENANT
ROBIN HOLT; DEPUTY JOSEPH ALLEN;
DEPUTY MEGAN RUTLEDGE; DEPUTY
NICHOLAS GUERRERO;
LIEUTENANT RANDALL MCELROY;
SERGEANT JOE ADAMS; DEPUTY ANTHONY COBB;
SERGEANT BRADY; DETECTIVE MARK JORDAN;
JOHN DOE CAPTAIN; SERGEANT COGDILL;
BENTON COUNTY; JOHN DOE
SERGEANT WHO TOOK PICTURES;
and SERGEANT W. GUENTHER                                                                         DEFENDANTS

## OPINION AND ORDER

Currently before the Court are two Reports and Recommendations ("R&Rs") (Docs. 242 & 243) submitted on the same day, January 31, 2022, by the Honorable Christy Comstock, United States Magistrate Judge for the Western District of Arkansas. The first R&R (Doc. 242) recommends granting a Motion for Summary Judgment (Doc. 195) filed by separate Defendant Mark Jordan, who is a detective working for the Bentonville Police Department. The second R&R (Doc. 243) recommends granting a Motion for Summary Judgment (Doc. 199) filed by the rest of the Defendants, all of whom are employed by Benton County, Arkansas: Deputy Adrian Cruz, Lieutenant Robin Holt, Deputy Joseph Allen, Deputy Megan Rutledge, Deputy Nicholas Guerrero, Lieutenant Randall McElroy, Sergeant Joe Adams, Deputy Anthony Cobb, Sergeant Trey Bandy, Sergeant Kenneth Cogdill, and Sergeant W. Guenther.

1

Plaintiff Tyler B. Klingensmith brought multiple claims pursuant to 42 U.S.C. § 1983 against these Defendants for incidents that allegedly occurred when he was a pretrial detainee housed at the Benton County Detention Center ("BCDC"). Since the two cases he filed in this Court involve overlapping facts and claims, the Court consolidated the cases on April 24, 2020. (Doc. 127).

For simplicity's sake, the Court has grouped Mr. Klingensmith's claims into the following three categories: (1) conspiracy to violate his Fourth and Fifth Amendment rights by falsifying arrest warrants, questioning him about pending criminal charges in violation of his *Miranda* rights, and illegally searching his cell phone and Twitter account as part of the criminal investigation (Claims 2, 3, 4, 13, 14, 15, and 16); (2) interfering with his Arkansas Freedom of Information Act ("FOIA") requests while he was incarcerated in the BCDC (Claim 5); (3) failing to protect him from an assault by another inmate in the BCDC (Claims 6, 8, 9, and 12); and (4) retaliating against him for filing grievances by placing him in lockdown in the BCDC and withdrawing certain privileges.

On February 28, 2022, Mr. Klingensmith filed Objections (Doc. 246) to the first R&R concerning Detective Jordan's Motion for Summary Judgment. On March 14, 2022, Mr. Klingensmith filed Objections (Doc. 247) to the second R&R addressing the Benton County Defendants' Motion for Summary Judgment. The Court is well persuaded that Magistrate Judge Comstock carefully considered the voluminous record in this case and, wherever possible, gave Mr. Klingensmith the benefit of the doubt as a *pro se* filer. Her two R&Rs, together, total 54 pages. Mr. Klingensmith's two sets of Objections total 96 pages.

The Court has reviewed the Objections and performed a *de novo* review of the record prior to making its findings below. *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The Objections, though lengthy, are not substantive. They fail to engage with the R&Rs' legal reasoning and confront the burden of proof Mr. Klingensmith must meet on summary judgment.

Mr. Klingensmith's Objections restate the factual claims he asserted on summary judgment. He generally claims that at least some plausible, non-speculative evidence exists to prove that all Defendants worked in concert to deprive him of his constitutional rights while he was housed at the BCDC as a pretrial detainee. This Opinion will therefore briefly address the four categories of claims Mr. Klingensmith filed and then address why the Court believes the Magistrate Judge's findings and recommendations are correct, despite Mr. Klingensmith's Objections.

The first category of claims broadly concerns Mr. Klingensmith's conspiracy theories. He contends Detective Jordan conspired with various jailers at the BCDC to violate Mr. Klingensmith's constitutional rights and make his life at the BCDC as difficult as possible as he awaited trial on various criminal charges. It is undisputed that Mr. Klingensmith eventually pleaded guilty to Stalking in the Second Degree, Terroristic Threatening in the First Degree, Financial Identity Fraud, Unlawful Distribution of Sexual Images or Recordings, and Violation of an Order of Protection. *See* Doc. 242, p. 9. He is now serving ten years in state prison for those crimes. The Court agrees with the Magistrate Judge that any constitutional claims Mr. Klingensmith might have otherwise asserted as to the pretrial investigation of criminal charges against him either were

waived when he pleaded guilty or are now barred pursuant to *Heck v. Humphrey*, 512 U.S. 477 (1994). To the extent any of these claims is not *Heck*-barred, Mr. Klingensmith's factual allegations—including those referenced in his Objections—are merely speculative and do not meet his burden of proof on summary judgment. As the Magistrate Judge notes, he spills tremendous amounts of ink "groundlessly concluding but not establishing" the existence of a civil conspiracy between and among law enforcement officers to convict him of crimes—even though he eventually pleaded guilty to those same crimes. (Doc. 243, p. 26).

The second category of claims relates to the Benton County Defendants' alleged interference with Mr. Klingensmith's FOIA requests. He fails to acknowledge in his Objections that a "[v]iolation of the Arkansas Freedom of Information Act is not cognizable under § 1983." (Doc. 243, p. 29). In light of this, there is no need for the Court to evaluate the sufficiency of the evidence in support of these claims.

Moving on to the third category, Mr. Klingensmith asserts that certain jailers at BCDC not only failed to protect him from two assaults by an inmate, but went so far as to "orchestrate" the inmate's attacks. (Doc. 247, p. 12). Mr. Klingensmith offers no proof beyond mere speculation that the Benton County Defendants conspired against him and wished him ill; in fact, the undisputed proof of record concerning the jailers' immediate response to these attacks shows just the opposite. Nevertheless, Mr. Klingensmith believes his jailers should have guaranteed his safety at all times. He reasons that because he was attacked twice by the same inmate, that fact alone should establish a violation of his constitutional rights. Unfortunately for Mr. Klingensmith, the law is not what he believes it to be.

To establish a failure-to-protect claim, a prisoner must cite at least some proof that prison officials were deliberately indifferent to his health and safety. *See* Doc. 242, pp. 29–30 (setting forth the correct legal standard). Deliberate indifference, in turn, requires a showing that officials knew of and disregarded "an excessive risk to inmate health or safety." *Id.* at p. 30 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). As the Magistrate Judge explains, Mr. Klingensmith can cite to no evidence that his jailers "recklessly disregard[ed] a known, excessive risk of serious harm." (Doc. 243, p. 33 (quoting *Davis v. Oregon Cnty.*, 607 F.3d 543, 549 (8th Cir. 2010)). The fact that Mr. Klingensmith was attacked twice by the same person does not, in and of itself, constitute sufficient proof to save this claim from summary judgment.

The first attack was a "surprise attack" that jailers could not have foreseen. It is undisputed that Mr. Klingensmith and his attacker, Robert Brinegar, were immediately separated and placed in separate housing pods. *See* Doc. 243, p. 11; *see also Jackson v. Everett*, 140 F.3d 1149, 1152 (8th Cir. 1998) ("[B]ecause prisons are dangerous places, housing the most aggressive among us and placing violent people in close quarters, . . . prison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another." (cleaned up)).

The second attack was described by Deputy Adrian Cruz in his incident report, and Mr. Klingensmith does not dispute the facts in this report. (Doc. 243, p. 15). It appears Mr. Klingensmith asked Deputy Cruz for permission to take a quick shower following a haircut. Deputy Cruz allowed him to shower in pod E-103, even though Mr. Klingensmith was being housed in pod E-102. *Id.* Mr. Klingensmith's pod was being cleaned by the other inmates at the time, and pod E-103 was on lockdown with all

5

inmates in their cells. *Id.* Inmate Brinegar was housed in pod E-103, and it appears he noticed Mr. Klingensmith showering and seized the opportunity to attack him a second time. Brinegar asked Deputy Cruz for permission to leave his cell briefly "to grab his medical cream that the nurse left for him." *Id.* It is undisputed that Deputy Cruz was unaware at the time that Mr. Klingensmith and Brinegar were under a "keep separate" order. *Id.* It is further undisputed that Brinegar attacked Mr. Klingensmith quickly and unexpectedly, and Deputy Cruz immediately "ran up the stairs and took control of Inmate Brinegar and put him on the ground." *Id.* For these reasons and those set forth in the R&R, the Court finds Mr. Klingensmith failed to meet his burden to establish a cognizable Eighth Amendment claim for failure to protect with respect to the second attack.[1]

The fourth and final category of claims is about retaliation. Once again, Mr. Klingensmith's Objections fails to grapple with his burden of proof on summary judgment. As to Detective Jordan, Mr. Klingensmith merely suspects that this officer conspired with certain jailers to make Mr. Klingensmith's pretrial incarceration difficult. There is only speculative evidence to support that contention. As to the Benton County Defendants, it is undisputed that Mr. Klingensmith was placed on disciplinary lockdown

---

[1] Even if Mr. Klingensmith had met his burden, the Court agrees with the Magistrate Judge that Deputy Cruz is deserving of qualified immunity for the second attack. According to the Supreme Court, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). It is undisputed here that Deputy Cruz had no actual knowledge that Brinegar posed a substantial risk to Mr. Klingensmith's safety. There is also no dispute that Deputy Cruz responded quickly and reasonably to the attack.

(or administrative segregation) for five separate rule violations he committed at the BCDC from March 29 to June 1, 2018. Though Mr. Klingensmith disputes his jailers' accounts of his conduct and notes that other inmates found him to be "nice," (Doc. 246, p. 30), a jailer will prevail on a retaliation claim as long as he submits "some evidence the inmate actually committed a rule violation." (Doc. 243, p. 34) (internal quotation marks and citation omitted). As the R&R explains, "[A] report from a correctional officer, *even if disputed by the inmate and supported by no other evidence*, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker." *Id.* (emphasis added) (quoting *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008)). Though Mr. Klingensmith speculates he was locked down and deprived of certain privileges without good cause, he presents no plausible evidence that filing grievances or engaging in other protected activities motivated Defendants' disciplinary actions in any way.

Accordingly, Mr. Klingensmith's Objections (Docs. 246 & 247) are **OVERRULED**, and the Reports and Recommendations (Docs. 242 & 243) are **APPROVED AND ADOPTED IN THEIR ENTIRETY**.

**IT IS ORDERED** that the Motions for Summary Judgment (Docs. 195 & 199) are **GRANTED**, and all claims are **DISMISSED WITH PREJUDICE** for the reasons explained in the R&Rs. Judgment will enter concurrently with this Order.

**IT IS SO ORDERED** on this 16th day of March, 2022.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE